# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK HEALY, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A. and DOES 1 through 5,<br><br>Defendants. | Case No.: 20-cv-01838-H-AHG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER**<br><br>[Doc. No. 8.] |

On August 11, 2020, Plaintiff Patrick Healy ("Plaintiff") filed a class action complaint against Defendants Wells Fargo Bank, N.A. and Does 1 through 5 in the Superior Court of California, County of San Diego, alleging various claims related to Defendants' mortgage servicing operations. (Doc. No. 1-2.) On September 18, 2020, Defendant Wells Fargo Bank, N.A., ("Defendant") removed the case to federal court.

(Doc. No. 1.)  On November 2, 2020, Defendant filed a motion to transfer this action to the U.S. District Court for the Western District of Virginia.  (Doc. No. 8-1.)  On November 23, 2020, Plaintiff filed a response in opposition to the motion to transfer.  (Doc. No. 14.)  On November 30, 2020, Defendant filed a reply.  (Doc. No. 15.)  The Court, pursuant to its discretion under Local Rule 7.1(d)(1), determines that the motion is fit for resolution without oral argument and submits the motion on the parties' papers.   For the following reasons, the Court denies Defendant's motion to transfer.

## **Background**[1]

Plaintiff owns a home located in San Marcos, California.  (Doc. No. 1-2 ¶ 16.)  According to Plaintiff, this home "is encumbered by a lien securing repayment of a home mortgage loan issued by and/or serviced by Defendant."  (Id. ¶ 17.)  As Plaintiff alleges, Defendant is a mortgage servicing company, meaning that mortgagors like Plaintiff make their payments to Defendant, who then applies those payments to the loan and reports payment information to consumer credit reporting agencies.  (Id. ¶ 19.)

Plaintiff contends that Defendant placed his home mortgage account into a forbearance program, which was designed to protect homeowners with COVID-19 related financial hardships, and subsequently reported to credit agencies that "no payments had been made at all on [his] account for months."  (Id. ¶ 21, 32-33.)  Plaintiff, however, claims that he never consented to be placed in a loan forbearance program and "had been making each monthly payment in full and on time every single month."  (Id. ¶ 23-24.)  To support the notion that Defendant unilaterally placed his mortgage account into forbearance, Plaintiff cited to an NBC News article in his complaint, which reported that Defendant had placed the mortgage accounts of other borrowers into forbearance without their consent in at least 14 other states.  (Id. ¶ 34.)  Plaintiff also cited to a case pending against Defendant in the U.S. District Court for the Western District of Virginia (the "VA case") wherein similar conduct is alleged against Defendant.  (Id. ¶ 36).

---

[1] The following allegations are taken from Plaintiff's complaint.

Plaintiff further asserts that he suffered financial consequences as a result of Defendant's actions. (Id. ¶¶ 26-31.) For example, Plaintiff alleges that he was unable to refinance his home mortgage loan because the alleged false reports made by Defendant impacted his creditworthiness. (Id. ¶ 31.) Consequently, Plaintiff filed a California class action complaint against Defendant on August 11, 2020, bringing a single cause of action under the California Consumer Credit Reporting Act, Cal. Civ. Code § 1785.25(a) (the "CCRAA") on his own behalf and on behalf of others similarly situated. (Id. ¶¶ 55-65.) By the present motion, Defendant moves to transfer this case to the U.S. District Court for the Western District of Virginia. (Doc. No. 8-1.)

## Discussion

**I.     The Interaction Between the First-to-File Rule and 28 U.S.C. § 1404**

Defendant argues that the Court should transfer this action pursuant to the first-to-file rule and 28 U.S.C. § 1404. (Id.) "Generally, under the first-to-file rule, when cases involving the same parties and issues are filed in two different districts, the court with the later-filed action has discretion to transfer . . . the second case in the interest of efficiency and judicial economy." Multimedia Patent Tr. v. Tandberg, Inc., No. 09-CV-1377 H (CAB), 2009 WL 3805302, at *1 (S.D. Cal. Nov. 12, 2009) (citing Cedars-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 769 (9th Cir. 1997)); see also Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc., 787 F.3d 1237, 1239 (9th Cir. 2015). As Defendant contends, the VA case is substantially similar to, and was filed before, the instant action. (Doc. No. 8 at 4-5.) Thus, Defendant asserts, the first-to-file rule counsels in favor of deference to the VA case. (See id. at 11.) Accordingly, Defendant requests the Court to transfer this case to the U.S. District Court for the Western District of Virginia in the interests of justice and judicial economy pursuant to § 1404, the relevant transfer statute. (Id. at 11-16.) Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Even if the first-to-file rule weighs in favor of transfer, however, § 1404's "might

have been brought" requirement "cabin[s]" the court's authority to transfer a case to another district in the first place. In re Bozic, 888 F.3d 1048, 1054 (9th Cir. 2018). "A contrary understanding of the interaction between the first-to-file rule and § 1404(a) would allow a judge-made doctrine to contravene a congressionally enacted statute—a result that the Supreme Court has made clear [lower courts] cannot countenance." Id. (citation omitted). Thus, regardless of the potential cost saving measures that transfer would provide, this Court can only transfer a case pursuant to the first-to-file rule to a district where the case "might have been brought" originally. See id.

## II.  Whether Transfer Is Proper Under § 1404

"A district court is one in which an action could have been brought originally if (1) it has subject matter jurisdiction; (2) defendants would have been subject to personal jurisdiction; and (3) venue would have been proper." Duffy v. Facebook, Inc., No. 16-CV-06764-JSC, 2017 WL 1739109, at *3 (N.D. Cal. May 4, 2017) (citing Hoffman v. Blaski, 363 U.S. 335, 343–44 (1960)); see also GameTek LLC v. Gameview Studios, LLC, No. 12-CV-00499 BEN, 2012 WL 6042917, at *1 (S.D. Cal. Dec. 4, 2012) (outlining the same requirements). These requirements must be met irrespective of any potential waiver by the defendant. Hoffman, 363 U.S. at 342–43 ("We do not think the § 1404(a) phrase 'where it might have been brought' can be interpreted to mean . . . 'where it may now be rebrought, with defendants' consent.'").

### A.  Personal Jurisdiction and Venue

At issue is (1) whether a district court in Virginia could exercise personal jurisdiction over Defendant in this case and (2) whether the Western District of Virginia would be a proper venue. Under the circumstances, both analyses fold into one another. Because neither party here asserts that any event or omission that gave rise to the Plaintiff's California law cause of action occurred in the Western District of Virginia, (see Doc No. 1-2 ¶¶ 16-49; Doc. No. 8 at 12), venue will only be proper if Defendant—the lone defendant joined to this action—can be considered to "reside[]" in that district within the meaning of 28 U.S.C. § 1391(b). Further, because Plaintiff alleges that Defendant is a national banking

association, (Doc. No. 1-2 ¶ 13), Defendant will be "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question," id. § 1391(c).[2] Thus, both personal jurisdiction and venue depend on whether Defendant is subject to personal jurisdiction in the Western District of Virginia.

### B.   General Personal Jurisdiction

Personal jurisdiction deals with the court's power to bind a party to its judgment. See Walden v. Fiore, 571 U.S. 277, 283 (2014). "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Id. A court may constitutionally exercise either general or specific personal jurisdiction over a party, or both. Bristol-Myers Squibb Co. v. Superior Court, 137 S. Ct. 1773, 1779-80 (2017). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." Id. at 1780. However, "only a limited set of affiliations with a forum" will subject a defendant to general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). This ordinarily requires that the defendant can be "fairly regarded as at home" in the forum. Id.; see also Bristol-Myers, 137 S. Ct. at 1779-80.

Here, Defendant does not appear to argue that it would be subject to general personal jurisdiction in Virginia. Plaintiff alleged in his complaint that Defendant is a national banking association that is headquartered in South Dakota, (Doc. No. 1-2 ¶ 13), and

---

[2]   The Court notes that § 1391 only explicitly applies to corporations. See id. However, several courts have treated national banks as corporations for purposes of [§ 1391]." Montgomery Bank, N.A. v. First Horizon Home Loan Corp., No. 4:09CV01334 ERW, 2010 WL 1712848, at *2 (E.D. Mo. Apr. 26, 2010) (citing Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir. 1984) and In re Rosenberger, 400 B.R. 569, 574-75 (Bankr. W.D. Mich. 2008)); see also Desai v. US Bank, 2007 WL 2410537, *1 (D. Neb. 2007) (explaining venue was proper in case against national banking association under § 1391); Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3813, at n.5 and accompanying text (4th ed.) (explaining that in most cases the general venue provisions apply to cases against a national bank, and citing legislative history indicating that Congress intended this result). The Court sees no reason to stray from these decisions, especially considering that the Supreme Court in Wachovia Bank v. Schmidt, 546 U.S. 303, 316–17 (2006), construed a previous opinion to "effectively align[] the treatment of national banks for venue purposes with the treatment of state banks and corporations."

Defendant did not directly contest this in its answer, (see Doc. No. 6 ¶ 13). Moreover, in its motion to transfer, Defendant does not argue that personal jurisdiction is proper on the basis that it is "at home" in Virginia. (Doc. No. 8 at 12.) Rather, Defendant claims that personal jurisdiction is proper because of its business activities present within the forum. (See id.; see also Doc. No. 15 at 9-10 (arguing personal jurisdiction and venue are proper because Defendant "conducts business 'in every single state,' including Virginia").) Thus, the Court turns to whether the Western District of Virginia would have specific personal jurisdiction over Defendant with respect to this action.

### C. Specific Personal Jurisdiction

A court may constitutionally exercise specific personal jurisdiction over a nonresident defendant only if: (1) the defendant "purposefully direct[ed]" his or her activities to the forum state or "purposefully avail[ed]" himself or herself "of the privileges of conducting activities in the forum"; (2) the plaintiff's claim "arises out of or relates to the defendant's forum-related activities"; and (3) the court's exercise of jurisdiction is reasonable. Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002)). The "arising out of" prong of this test is dispositive in this case. The Ninth Circuit employs "a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995) (citation omitted). For the purposes of the instant motion, the "arising out of" prong essentially boils down to whether Plaintiff's claim would have arisen "but for" Defendant's contacts with the Western District of Virginia. See id.

Here, Plaintiff's California law claim does not "arise out of" Defendant's contacts relating to the Western District of Virginia. Plaintiff is a California resident who owns a home in California secured by a mortgage loan that is managed by Defendant. (Doc. No. 1-2 ¶¶ 10, 16-19.) Plaintiff alleges that Defendant violated California law, the CCRAA, by improperly placing his mortgage into a forbearance program without his consent and falsely reporting that he was not up to date on his payments. (Id. ¶ 21-24, 32-33.) Plaintiff

seeks to represent two classes of California residents who were similarly injured in violation of the CCRAA. (Id. ¶¶ 44-45.) Nowhere in the complaint does Plaintiff allege that Defendant engaged in conduct relating to, or had contacts with, the Western District of Virginia that gave rise to his claims or the claims of the putative class members he seeks to represent.[3] It follows that had Defendant never operated or acted in the Western District of Virginia, Plaintiff's alleged California claims would have arisen nonetheless. Accordingly, had Plaintiff originally brought this lawsuit in the Western District of Virginia, Defendant could have successfully moved to dismiss the action for lack of personal jurisdiction and, consequently, improper venue.

The Western District of Virginia is, thus, not a district in which this case "might have been brought" within the meaning of § 1404(a). See Hoffman, 363 U.S. at 343–44; Duffy, 2017 WL 1739109, at *3. This precludes the Court from transferring this case to that district, even if the Court were to determine that transfer served the interests of justice pursuant to the first-to-file rule and § 1404's convenience factors. See In re Bozic, 888 F.3d at 1054 (holding that a "district court committed clear legal error" when it transferred an action, pursuant to the first-to-file rule, to a district where it could not have originally been brought under § 1404). Accordingly, the Court need not address the first-to-file rule arguments raised by Defendant at this juncture. As such, Defendant's motion to transfer this action is denied.

//

//

---

[3] Plaintiff's complaint does mention that Defendant may have engaged in similar mortgage servicing conduct outside of California. (See id ¶¶ 34-36.) Namely, Plaintiff cites to a class action filed in the Western District of Virginia involving analogous allegations. (Id. ¶ 36.) However, presumably, Plaintiff added this reference to reinforce the plausibility of his claims. (See id.) In any event, allegations that Defendant engaged in similar conduct giving rise to the claims of plaintiffs in another lawsuit in the Western District of Virginia are not sufficient alone for a district court in the Western District of Virginia exercise specific personal jurisdiction over Defendant in the instant action. After all, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related conduct* must create a substantial connection with the forum State." Walden, 571 U.S. at 283-84. Here, Plaintiff does not allege that Defendant engaged in any conduct in Virginia that gave rise to his specific claims.

### Conclusion

For the foregoing reasons, the Court denies Defendant's motion to transfer this action to the U.S. District Court for the Western District of Virginia.

**IT IS SO ORDERED.**

DATED: December 3, 2020

*(signature)*
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT